# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

<table>
<tr>
<td>

NAUTILUS INSURANCE COMPANY,

      Plaintiff,

v.

GAWKER MEDIA, LLC AKA GAWKER
MEDIA; GAWKER MEDIA GROUP, INC.
AKA GAWKER MEDIA; GAWKER
ENTERTAINMENT, LLC; GAWKER
TECHNOLOGY, LLC; GAWKER SALES,
LLC; NICK DENTON; A.J. DAULERIO;
KATE BENNERT; BLOGWIRE HUNGARY
SZELLEMI ALKOTAST HASZNOSITO KFT
AKA GAWKER MEDIA; TERRY BOLLEA.

      Defendants.

</td>
<td>

Civil Action No.:  14 CV 5680

**COMPLAINT FOR
DECLARATORY JUDGMENT**

JUDGE STEIN


RECEIVED
JUL 24 2014
U.S.D.C. S.D. N.Y.

</td>
</tr>
</table>

Plaintiff, Nautilus Insurance Company ("Nautilus"), by way of Complaint for Declaratory Judgment against Defendants, Gawker Media, LLC a/k/a Gawker Media; Gawker Media Group, Inc. a/k/a Gawker Media; Gawker Entertainment, LLC; Gawker Technology, LLC; Gawker Sales, LLC; Nick Denton; A.J. Daulerio; Kate Bennert; Blogwire Hungary Szellemi Alkotast Hasznosito KFT a/k/a Gawker Media (collectively the "Gawker Defendants"); and Terry Bollea states as follows:

## THE PARTIES AND JURISDICTION

1.    Nautilus is an Arizona Corporation that is authorized to, and does engage in the business of insurance in New York.  Nautilus has its principal place of business at 7233 E. Butherus Drive, Scottsdale, Arizona.

2.      On information and belief, Gawker Media, LLC a/k/a Gawker Media is a Delaware Limited Liability Company with a corporate address of 210 Elizabeth Street, 4th Floor, New York, NY 10012.

3.      On information and belief, Gawker Media Group, Inc. a/k/a Gawker Media is a foreign corporation with a corporate address in the Cayman Islands.

4.      On information and belief, Gawker Entertainment, LLC is a New York Limited Liability Company with a corporate address of 210 Elizabeth Street, New York, NY 10012.

5.      On information and belief, Gawker Sales, LLC is a New York Limited Liability Company with a corporate address of 210 Elizabeth Street, New York, NY 10012.

6.      On information and belief, Nick Denton is a resident of New York County, New York.

7.      On information and belief, A.J. Daulerio is a resident of Kings County, New York.

8.      On information and belief, Kate Bennert is a resident of New York County, New York.

9.      On information and belief, Blogwire Hungary Szellemi Alkotast Hasznosito KFT a/k/a Gawker Media is a foreign company with a corporate address in Hungary

10.     On information belief, Terry Bollea is a resident of Florida.

11.     Nautilus does not make a claim against Terry Bollea and he is named solely as an interested party pursuant to 28 U.S.C.S. §2201.

12.     The amount in controversy exceeds the sum of Seventy-Five Thousand ($75,000), not including interest.

13.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

14.     Venue is proper pursuant to 28 U.S.C. §§ 1391 (b).

## NATURE OF THE ACTION

15.     This matter arises from the Gawker Defendants allegedly posting in October 2012 a secretly taped video of Mr. Bollea engaged in sexual relations with Heather Clem and an accompanying narrative on a website owned, operated, or maintained by the Gawker Defendants.

16.     As a result of the posting, Mr. Bollea filed several actions against the Gawker Defendants.

17.     On December 28, 2012, Mr. Bollea filed a first amended complaint against the Gawker Defendants in his Florida State court action.

18.     In the first amended complaint Bollea asserts eight causes of action against the Gawker Defendants: 1) invasion of privacy; 2) publication of private facts; 3) publication of private facts; 4) invasion of privacy; 5) violation of Florida Common Law Right to Publicity; 6) intentional infliction of emotional distress; 7) negligent infliction of emotional distress; 8) violation of section 934.10 of the Florida Statutes (the "Bollea Action").   Attached as Exhibit A is a copy of the first amended complaint.

## THE NAUTILUS POLICY

19.     Nautilus issued Gawker Media LLC a commercial general liability policy bearing policy number NN224201 with limits of liability of $1,000,000 per occurrence, and an effective date of April 27, 2012 (the "Nautilus Policy").

20.     The Nautilus Policy was cancelled at the request of Gawker Media LLC effective October 22, 2012.

21.     Per the Declarations page the policy premium for general liability coverage was $3,210.00.   The Business Description identified in the Common Policy Declarations and the Commercial General Liability Coverage Part Declarations is "office".

22.     The insuring agreement of Coverage A of the Nautilus Policy provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > (1) The amount we will pay for damages is limited as described in Section III –Limits Of Insurance; and
> >
> > (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period; . . .
>
> . . .

23.    The Nautilus Policy contains the following definitions:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, welling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"."

24.    The Nautilus Policy includes the following exclusions:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

25.     The Nautilus Policy also provides:

EXCLUSION – PERSONAL AND ADVERTISING INJURY
This endorsement modifies insurance provided under the
following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.
COVERAGE B (Section I) does not apply and none of the references to it in the
Coverage Part apply.

26.     The Nautilus Policy includes a "LIMITATION OF COVERAGE TO

DESIGNATED OPERATIONS" endorsement that provides:

This endorsement modifies insurance provided under the
following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      The following exclusion is added to 2. Exclusions of
        Section I - Coverage A - Bodily Injury And Property
        Damage Liability, Coverage B - Personal And Advertising
        Injury Liability and Coverage C – Medical Payments:

This insurance does not apply to "bodily injury", "property
damage", "personal and advertising injury" or medical payments
arising out of, or in any way related to, operations performed by
any insured or any person or organization for whom any insured
may be legally or contractually responsible, unless such operations
are "designated operations".

B.      For the purpose of this endorsement, the following
        definition is added to the Definitions section:

"Designated operations" means only those operations
performed by any insured that are described on the
General Liability Coverage Part Declarations, the
endorsements, or supplements of this insurance.

27.     When applying for the Nautilus Policy, the Gawker Defendants represented that

they were seeking the Nautilus Policy to cover "office liability exposure and occasional (sic)

they need event coverage."   Further, it was represented that the Gawker Defendants had a

separate E&O media liability policy.

## CLAIM HANDLING

28.     On or about July 3, 2013, the Gawker Defendants tendered the <u>Bollea</u> Action to Nautilus.

29.     On July 18, 2013, Nautilus issued a disclaimer letter to the Gawker Defendants.

30.     Nautilus disclaimed coverage for the <u>Bollea</u> Action on the ground that, among other reasons, coverage under the Nautilus Policy was not triggered and even if it was, various exclusions applied to preclude coverage.

31.     On August 1, 2013, the Gawker Defendants challenged the disclaimer letter because, according to the Gawker Defendants, the policy they sought from Nautilus to cover "office liability exposure" applied to the claims asserted by Mr. Bollea.

32.     On September 12, 2013, Nautilus issued a reservation of rights letter to the Gawker Defendants and advised that Nautilus "will agree to contribute to the defense of [the Gawker Defendants]" in the <u>Bollea</u> Action.

33.     Nautilus stated that it "is reserving the right to litigate all coverage defenses and withdraw from the defense of the Gawker Defendants if a court determines that Nautilus has no duty to defend with respect to the claims asserted by Terry Bollea."

34.     Nautilus also stated that "Nautilus Insurance Company reserves the right to disclaim coverage and to bring an action in an appropriate state or federal court of competent jurisdiction and venue in order to limit, obtain a declaration, or interplead, to enforce the limitations mentioned herein and declare the obligations and responsibilities of the parties hereto under the contract of insurance. Nautilus Insurance Company, by this letter, by contributing to the defense of the Gawker Defendants, and by its continued investigation, does not waive nor invalidate any of the other terms, conditions or exclusions of the policy."

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

35.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 of the Complaint as if set forth at length herein.

36.     The insuring agreement of Coverage A of the Nautilus Policy is not triggered by the claims asserted in the Bollea Action because those claims do not seek recovery for "bodily injury" or "property damage" "caused by an 'occurrence,'" within the meaning of the Nautilus Policy.

37.     Nautilus therefore has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the Bollea Action.

38.     Nautilus is entitled to a declaration that the Nautilus Policy does not provide coverage for the claims asserted in the Bollea Action because the insuring agreement in Coverage A of the Nautilus Policy is not triggered by such claims.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment)

39.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 of the Complaint as if set forth at length herein.

40.     The insuring agreement of Coverage A of the Nautilus Policy is not triggered to the extent any "bodily injury" or "property damage" alleged did not occur during the Nautilus Policy period.

41.     Nautilus therefore has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for claims in the Bollea Action seeking recovery for any such "bodily injury" or "property damage".

42.     Nautilus is entitled to a declaration that the Nautilus Policy does not provide coverage for the claims asserted in the <u>Bollea</u> Action to the extent they seek recovery for "bodily injury" or "property damage" that occurred outside the Nautilus Policy period because the insuring agreement in Coverage A of the Nautilus Policy is not triggered by such claims.

**AS AND FOR A THIRD CAUSE OF ACTION**
**<u>(Declaratory Judgment)</u>**

43.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 of the Complaint as if set forth at length herein.

44.     To the extent the <u>Bollea</u> Action seeks recovery for "bodily injury", such injury was expected or intended by the Gawker Defendants and therefore, is not covered under Coverage A by virtue of exclusion a. Expected Or Intended Injury.

45.     To the extent the <u>Bollea</u> Action seeks recovery for "bodily injury", such injury arises out of "personal and advertising injury" within the meaning of the Nautilus Policy and therefore is not covered under the Nautilus Policy by virtue of exclusion o. Personal And Advertising Injury, and/or the Endorsement entitled "Exclusion – Personal and Advertising Injury".

46.     The claims asserted in the <u>Bollea</u> Action fall entirely within the scope of one or more of the above exclusions.

47.     Nautilus therefore has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the <u>Bollea</u> Action.

48.     Nautilus is entitled to a declaration that the Nautilus Policy does not provide coverage for the claims asserted in the <u>Bollea</u> Action because coverage for them is precluded by virtue of one or more policy exclusions.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

49.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 of the Complaint as if set forth at length herein.

50.    The "Limitation of Coverage" endorsement contained in the Nautilus Policy limits coverage to the Gawker Defendants' liability for operating their office at 210 Elizabeth Street, New York, NY.

51.    The Gawker Defendants specifically sought the Nautilus Policy only to cover their "office liability exposure" at the Elizabeth Street location and, occasionally, event exposure.

52.    The claims asserted against the Gawker Defendants in the Bollea Action do not seek to impose liability on them related to operation of their Elizabeth Street office and therefore, are not covered under the Nautilus Policy.

53.    Nautilus therefore has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the Bollea Action.

54.    Nautilus is entitled to a declaration that the Nautilus Policy does not provide coverage for the claims asserted in the Bollea Action because such claims fall outside the scope of the limited coverage provided under the Nautilus Policy.

## AS AND FOR AN FIFTH CAUSE OF ACTION
### (Reimbursement of Defense Costs)

55.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 54 of the Complaint as if set forth at length herein.

56.     Nautilus has been defending the Gawker Defendants in the Bollea Action since September 2013 and has been incurring attorneys' fees and costs related to such defense since that time.

57.     The Nautilus Policy provides that Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

58.     For the foregoing reasons the Bollea Action seeks damages for "bodily injury" or "property damage" to which the Nautilus Policy does not apply.

59.     Nautilus therefore has and had no duty to defend the Gawker Defendants in the Bollea Action.

60.     Because there is no coverage for the claims asserted in the Bollea Action under the Nautilus Policy the Gawker Defendants are responsible for their defense in the Bollea Action.

61.     The Gawker Defendants have been unjustly enriched to the extent of the defense costs paid by Nautilus for the defense of the Bollea Action.

62.     Nautilus therefore is entitled to recover all defense costs it has paid for the defense of the Bollea Action from the Gawker Defendants.

11

**WHEREFORE**, Nautilus respectfully requests that the Court enter judgment in its favor as follows:

A.   On the First Cause of Action, declaring that Nautilus has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the <u>Bollea</u> Action because the insuring agreement in Coverage A of the Nautilus Policy is not triggered;

B.   On the Second Cause of Action, declaring that Nautilus has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the <u>Bollea</u> Action to the extent that such claims seek recovery for "bodily injury" or "property damage" that did not occur during the Nautilus Policy period;

C.   On the Third Cause of Action, declaring that Nautilus has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the <u>Bollea</u> Action because coverage for them under the Nautilus Policy is precluded by one or more policy exclusions;

D.   On the Fourth Cause of Action, a declaration that Nautilus has no duty to defend or indemnify the Gawker Defendants under the Nautilus Policy for the claims asserted in the <u>Bollea</u> Action because such claims fall outside the scope of the limited coverage provided by the Nautilus Policy;

D.   On the Fifth Cause of Action, awarding money damages in favor of Nautilus and against the Gawker Defendants for reimbursement of all attorneys' fees, costs and expenses incurred and to be incurred by Nautilus in defending the <u>Bollea</u> Action;

E.    Awarding Nautilus its attorneys' fees, costs, and expenses; and

F.    Awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 24, 2014

**COUGHLIN DUFFY LLP**

By: _____
       Justin N. Kinney
      Wall Street Plaza
      88 Pine Street, 28th Floor
      New York, New York 10005
      (212) 483-0105
      *Attorneys for Plaintiff,*
      *Nautilus Insurance Company*

**Exhibit A**

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

TERRY GENE BOLLEA professionally
known as HULK HOGAN,

          Plaintiff,

    v.

HEATHER CLEM; GAWKER MEDIA, LLC
aka GAWKER MEDIA; GAWKER MEDIA
GROUP, INC. aka GAWKER MEDIA;
GAWKER ENTERTAINMENT, LLC;
GAWKER TECHNOLOGY, LLC; GAWKER
SALES, LLC; NICK DENTON; A.J.
DAULERIO; KATE BENNERT, and
BLOGWIRE HUNGARY SZELLEMI
ALKOTAST HASZNOSITO KFT aka
GAWKER MEDIA,

          Defendants.

Case No. 12012447-CI-011



FILED
CIVIL COURT RECORDS DEPARTMENT
DEC 2 8 2012
KEN BURKE
CLERK CIRCUIT COUNTY COURT

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff Terry Gene Bollea ("Plaintiff" or "Mr. Bollea"), professionally known as "Hulk

Hogan," sues defendants Heather Clem aka Heather Cole ("Clem"), Gawker Media, LLC aka

Gawker Media, Gawker Media Group, Inc. aka Gawker Media, Gawker Entertainment, LLC,

Gawker Technology, LLC, Gawker Sales, LLC, Nick Denton, A.J. Daulerio, Kate Bennert,

Blogwire Hungary Szellemi Alkotast Hasznosito KFT aka Gawker Media (collectively, the

"Gawker Defendants") (collectively with Clem, "Defendants"), and alleges as follows:

## NATURE OF THIS ACTION

    1.    Defendants have engaged in outrageous, irresponsible and despicable conduct that

should be punished to the maximum extent under the law.  Defendant Clem caused Mr. Bollea to

be secretly videotaped in or about 2006, without his knowledge or consent, while he was engaged in private consensual sexual relations with her in a private bedroom. On or about October 4, 2012, the Gawker Defendants posted to the Internet a one-minute and forty-second "highlight reel" of the secretly-taped video and audio footage depicting Mr. Bollea naked and engaged in private consensual sexual relations with Clem in a private bedroom (the "Video"). The Gawker Defendants also posted, with the Video, a graphic narrative that describes the sexual activity in the Video in lurid detail (the "Narrative"). The Gawker Defendants posted the Video and Narrative at their website www.Gawker.com (the "Gawker Site"). The Gawker Defendants posted the Video and Narrative for the public to view, for the purpose of obtaining tremendous financial benefit for themselves, including without limitation (a) the sale of advertisements at the Gawker Site to viewers of the webpage with a link to the Video and Narrative, and (b) attracting new viewers to the Gawker Site for the long-term financial benefit of the Gawker Defendants and their numerous affiliated websites, and additional revenues from the substantial new viewers brought to the Gawker Site and its affiliated websites by the Video and Narrative.

2.     Mr. Bollea had no knowledge that the intimate activity depicted in the Video was being recorded. To the contrary, Mr. Bollea believed that such activity was completely private, and he had a reasonable expectation of his privacy in the private bedroom, and he reasonably believed that his privacy was safe and protected at all relevant times.

3.     Both Clem's secret recording of Mr. Bollea naked and engaged in private consensual sexual activity, and the Gawker Defendants' posting of the Video and Narrative at the Gawker Site, constitutes a shameful and outrageous invasion of Mr. Bollea's right of privacy by a group of loathsome Defendants who have no regard for human dignity and care only about maximizing their revenues and profits at the expense of all others.

4.       Mr. Bollea is informed and believes that the activities by both Clem, and the Gawker Defendants, constitutes a criminal violation of Florida's Video Voyeurism law codified at Section 810.145 of the Florida Statutes.

5.       This lawsuit was necessitated by Defendants' blatant violations of Mr. Bollea's right of privacy and other rights as discussed herein.  Clem violated Mr. Bollea's rights by participating in the secret recording of Mr. Bollea naked and engaged in private sexual activity in a private bedroom.  The Gawker Defendants violated Mr. Bollea's rights by their wrongful disclosure of the private acts depicted in the Video; their unauthorized commercial exploitation of Plaintiff's name, image, identity and persona; their refusal to remove the Video and Narrative when Plaintiff repeatedly requested and demanded its removal from the Gawker Site; and other calculated wrongful and tortious conduct as described herein.

6.       Defendants' malicious conduct violates Plaintiff's constitutional and common law privacy rights and publicity rights, and exceeds all bounds of human decency.  Defendants' gross and egregious intrusion into Plaintiff's privacy must be stopped, and must be punished to the maximum extent of the law.

## JURISDICTION

7.       This Court has jurisdiction because Plaintiff seeks relief in an amount greater than $15,000, exclusive of interest, costs and attorneys' fees.

8.       This Court has personal jurisdiction over the Defendants as follows:

a.       Defendants committed tortious acts within the State of Florida thereby satisfying Florida's long-arm statute, section 48.193, Florida Statutes;

b.       Defendants have committed intentional torts expressly aimed at Plaintiff, the effects of which were suffered in this circuit.  Defendants' intentional conduct was calculated

{BC00026189:1}1187801.1 EAST\52369214.1                          3

to cause injury to Plaintiff in Florida. Based on their intentional torts, Defendants should have reasonably anticipated being haled into this Court and due process is satisfied.

9.  Venue is proper in this Court pursuant to section 47.011, Florida Statutes, because, among other things, the claims at issue accrued within this circuit.

## PARTIES

10.  Plaintiff Terry Gene Bollea is a resident and citizen of the State of Florida, and resident of Pinellas County.

11.  Defendant Heather Clem aka Heather Cole is a resident of the State of Florida, believed to reside in Hillsborough County.

12.  At all relevant times, defendant Gawker Media, LLC aka Gawker Media, was and is a limited liability company organized and operating under the laws of the State of Delaware, with its principal place of business in New York.

13.  At all relevant times, defendant Gawker Media Group, Inc. aka Gawker Media, was and is a Cayman Islands corporation.

14.  At all relevant times, defendant Gawker Entertainment, LLC, was and is a New York limited liability company.  Thus, defendant Gawker Entertainment, LLC was and is a citizen of New York.

15.  At all relevant times, defendant Gawker Technology, LLC was an is a New York limited liability company.

16.  At all relevant times, defendant Gawker Sales, LLC was an is a New York limited liability company.

17.  Plaintiff is informed and believes and based thereon alleges that defendants Gawker Media, LLC, Gawker Entertainment, LLC, Gawker Technology, LLC, and Gawker

Sales, LLC were and are all under the control of defendant Gawker Media Group, Inc. based in the Cayman Islands.

18.     At all relevant times, defendant Blogwire Hungary Szellemi Alkotast Hasznosito KFT aka Gawker Media ("Blogwire Hungary") was and is a Hungarian off-shore company, and owns the Internet domain name GAWKER.COM.

19.     Defendants Gawker Media, LLC, Gawker Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC, Gawker Media Group, Inc., and Blogwire Hungary are collectively referred to herein as "Gawker Media".

20.     Gawker Media owns, operates, controls and publishes several Internet websites, including the Gawker Site, which disseminate information worldwide via the Internet.

21.     At all relevant times, defendant Nick Denton ("Denton") was and is a citizen of Hungary and the United Kingdom, and is a resident and domiciliary of the State of New York. Defendant Denton is the founder of Gawker Media and currently owns all of, or a controlling or substantial interest in, Gawker Media.

22.     At all relevant times, defendant A.J. Daulerio ("Daulerio") was and is a citizen, resident and domiciliary of the State of New York.  Plaintiff is informed and believes and based thereon alleges that defendant Daulerio is the Editor in Chief of the Gawker Site and Gawker Media.

23.     Plaintiff is informed and believes that defendant Kate Bennert ("Bennert") is a citizen, resident and domiciliary of the State of New York and is employed by Gawker Media.

24.     Plaintiff is informed and believes and based thereon alleges that the Gawker Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Gawker

Defendants, and each of them are, and at all times herein mentioned were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture.  Plaintiff further is informed and believes and based thereon alleges that the acts and conduct herein alleged of each of the Gawker Defendants were known to, authorized by, and/or ratified by the other Gawker Defendants, and each of them.

## FACTS GIVING RISE TO THE CLAIMS

25.     Plaintiff is a professional wrestler, motion picture actor, and television personality who has enjoyed mainstream popularity as the character "Hulk Hogan."  Plaintiff is a twelve-time world wrestling champion.

26.     In or about 2006, Mr. Bollea engaged in private sexual relations with defendant Heather Clem, in Clem's private bedroom.  Unbeknownst to Mr. Bollea, and without his knowledge or consent, Mr. Bollea was filmed naked and engaged in private sexual relations with Clem.  Plaintiff is informed and believes and on that basis alleges that Clem was involved in filming the private consensual sexual encounter between Mr. Bollea and Clem.  Mr. Bollea understood, believed and expected that the sexual activities in which he and Clem engaged in her private bedroom were completely private and would not be viewed by any other persons.  Had Mr. Bollea known that his private sexual activities were being secretly filmed, Mr. Bollea would not have engaged in any such activities.

27.     Plaintiff is informed and believes and thereon alleges that the Gawker Defendants, based on the actions of Clem and others, obtained a copy of the secretly-filmed recording depicting Mr. Bollea naked and engaged in sexual relations with Clem.  The recording was edited by the Gawker Defendants into a one-minute and forty-second "highlight reel" depicting Mr. Bollea fully naked; showing his sex partner, Clem, performing oral sex on him; and showing

him engaged in sexual intercourse with her. The footage was not blocked, blurred or obscured in any way by the Gawker Defendants, who created the edited "highlight reel" and also added English subtitles to the Video to ensure that viewers did not miss a word of their private encounter. The Gawker Defendants also prepared the Narrative describing the sexual encounter in lurid detail.

28.    On or about October 4, 2012, the Gawker Defendants published at the Gawker Site the Video depicting Plaintiff having private consensual sexual relations with an anonymous woman in a private bedroom, and the Narrative graphically describing the actions taking place in the Video in lurid detail. Defendant Bennert, with the help or under the direction of defendants Denton and Daulerio, edited the secretly-filmed recording into the Video without Plaintiff's knowledge or consent. The Narrative was written and edited by defendants Daulerio, Denton and Bennert. Plaintiff made numerous and repeated demands to the Gawker Defendants, including directly to defendant Denton, to remove the Video from the Gawker Site. However, the Gawker Defendants failed and refused to do so.

29.    At no time prior to, during, or after the private consensual sexual encounter between Mr. Bollea and Clem did Mr. Bollea ever authorize or consent to any person or entity recording the private, intimate acts depicted in the Video, or the storage of the Video, or the editing of the Video, the dissemination, publishing or exploitation of the Video in any way or manner whatsoever, or the creation of the Narrative or other work based on the Video. On the contrary, Plaintiff finds the secret recording of his private sexual activity by Ms. Clem and the publishing of the Video and Narrative by the Gawker Defendants to be outrageous and egregious. The Video and Narrative have never been authorized by Plaintiff for any purpose whatsoever, including any form of disclosure to the public whatsoever.

30.     Numerous media outlets and websites picked up on the Video and Narrative posted at the Gawker Site, and posted links to it, thus exposing hundreds of millions of people to the Video and Narrative. As a natural and foreseeable consequence, massive numbers of individuals were drawn to the Gawker Site, for which the Gawker Defendants have reaped tremendous revenues and profits, and have been unjustly enriched therefrom, based on both the short term web traffic of millions of people who have viewed the Video and Narrative and advertisements displayed thereat, and the long term increase in viewership to the Gawker Site and the Gawker Defendants' other affiliated sites, and the revenues and profits associated therewith for a prolonged period of time. Such tremendous benefits are a direct result of the tremendous fame and goodwill of Plaintiff.

31.     As a natural and foreseeable consequence of Defendants' actions, Plaintiff has suffered, and continues to suffer, tremendous emotional distress. His life was "turned upside down" by the unlawful actions of the Defendants, including the continued display of the Video and Narrative at the Gawker Site, and Plaintiff continues to suffer from substantial emotional distress, on a daily basis, as a result. In particular, Plaintiff has suffered, and continues to suffer, substantial embarrassment, humiliation and hurt feelings as a result. Moreover, Plaintiff's goodwill, commercial value, and brand have been substantially harmed as a result as well.

32.     Plaintiff has devoted a tremendous amount of his time and effort to developing his career as a professional champion wrestler, motion picture actor, and television personality, and to developing his universal goodwill, reputation and brand. Such efforts have created considerable commercial value in his name, image, identity and persona.

33.     The commercial value of Plaintiff's name, image, identity and persona has been, and continues to be, substantially diminished by Defendants' actions, including the secret taping

of Plaintiff naked and having sex; the unauthorized transmission of that recording to the Gawker

Defendants; and the unauthorized posting, publishing, distribution and dissemination of the

Video and Narrative, which is perceived unfavorably by the public and by the negative portrayal

of Plaintiff in the Video and Narrative to the general public.

34.    Defendants' conduct manifests a depraved disregard for Plaintiff's privacy rights

and an unauthorized commercial exploitation of his publicity rights.

35.    Plaintiff is informed and believes and alleges thereon that unless enjoined and

restrained, the Gawker Defendants will continue to post, publish, distribute, disseminate and

exploit the Video and Narrative, despite Plaintiff's numerous and repeated demands that the

Gawker Defendants cease and desist.  Such infringement and violation of Plaintiff's rights will

continue to cause Plaintiff severe emotional distress and damage, for which there is no adequate

remedy at law, if the Video and/or Narrative continue to be posted, published, distributed,

disseminated and exploited by the Gawker Defendants.  Such conduct and activity has caused

and will continue to cause Plaintiff to suffer irreparable harm for which there is no adequate

remedy at law.

36.    All conditions precedent to the bringing and maintenance of this action and the

granting of the relief requested have been performed, have occurred, or have been waived.

### FIRST CAUSE OF ACTION

### (Invasion of Privacy by Intrusion Upon Seclusion Against Defendant Heather Clem)

37.    Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation

contained in Paragraphs 1 through 36, inclusive, as though fully set forth herein.

38.    Clem, without Plaintiff's knowledge or consent, has grossly invaded Plaintiff's

protected rights of privacy as recognized under the United States Constitution, Florida

Constitution, and the common law, by filming Plaintiff in or about 2006 engaged in private

consensual intimate sexual relations with Ms. Clem in a private bedroom.  Plaintiff recently
learned of the existence of this secretly-filmed video, and brought this lawsuit promptly
thereafter.

39.     Clem further violated Plaintiff's rights of privacy by disclosing the secretly-
filmed video to third parties, which then resulted in excerpts of the secretly-filmed video being
posted on the Gawker Site.

40.     The videotaping of Plaintiff engaging in consensual sexual relations in private
quarters was not carried out for reasonable or legitimate purposes.  Plaintiff had a reasonable
expectation of privacy at all relevant times, and did not know about, nor consent to, the taping of
the activity depicted in the secretly-filmed video.

41.     The unauthorized taking and dissemination of the secretly-filmed video is highly
offensive and objectionable to Plaintiff and to any reasonable person of ordinary sensibilities,
and is not of legitimate public concern.

42.     Clem knew or should have known that the secretly-filmed video contained private
and confidential information, that Plaintiff had a reasonable expectation of privacy, that her
conduct would cause private and personal things about Plaintiff to be revealed which Clem had
no right to disseminate or disclose, and that the publication of these private facts constitute a
clear and substantial violation of Plaintiff's right of privacy.

43.     Clem violated Plaintiff's fundamental privacy rights by the conduct alleged
herein, including the outrageous intrusion into Plaintiff's privacy and the publication, and
dissemination of the secretly-filmed video in an unprivileged manner in conscious disregard of
Plaintiff's rights.

44.     Plaintiff is informed and believes and thereon alleges that Clem acted with actual malice and reckless disregard of Plaintiff's right of privacy.

45.     Unless and until enjoined and restrained by order of this Court, Clem's continued acts will cause Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the secretly-filmed video and all portions and content thereof and all copies thereof, and mandating the delivery of same to Plaintiff and transferring to Plaintiff all right, title and interest in the secretly-filmed video and all portions and content thereof and all copies thereof.

46.     Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the secretly-filmed video , and any portions and content thereof; mandating the delivery of all reproductions and copies of the secretly-filmed video and all portions and content thereof; and transferring to Plaintiff all right, title and interest in and to the secretly-filmed video and all portions and content thereof.

47.     Unless and until enjoined and restrained by order of this Court, Defendants' continued acts will cause Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the secretly-filmed video and all portions and content thereof and all copies thereof, and mandating the delivery of same to Plaintiff and transferring to Plaintiff all right, title and interest in the secretly-filmed video and all portions and content thereof and all copies thereof.

48.     Plaintiff is informed and believes and on that basis alleges that the aforementioned acts of Clem were done intentionally or with a conscious and/or reckless

disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

## SECOND CAUSE OF ACTION

### (Publication of Private Facts Against Defendant Heather Clem)

49.    Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 36, inclusive, as though fully set forth herein.

50.    Clem disclosed or caused to be disclosed to third parties the contents of the secretly-filmed video depicting Plaintiff in or about 2006 engaged in private consensual sexual relations between with Ms. Clem in a private bedroom.  Clem knew, or should have known, that the secretly-filmed video contained private and confidential information; that Plaintiff had a reasonable expectation of privacy in engaging in the activity depicted in the secretly-filmed video; that the secretly-filmed video was taken without Plaintiff's knowledge, consent, or approval and would reveal private and personal things about Plaintiff if disclosed to third parties which Clem had no right to disseminate or disclose; and that this publication of these private facts would be offensive and objectionable to a reasonable person of ordinary sensibilities, and would have the natural tendency of causing substantial damages to Plaintiff.

51.    Clem's actions served no legitimate public interest.

52.    Plaintiff is informed and believes and thereon alleges that Clem, acted with actual malice and reckless disregard of Plaintiff's right to privacy.

53.    Unless and until enjoined and restrained by order of this Court, Defendants' continued acts will cause Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the secretly-filmed video and all portions and content thereof and all copies thereof, and

mandating the delivery of same to Plaintiff and transferring to Plaintiff all right, title and interest

in the secretly-filmed video and all portions and content thereof and all copies thereof.

54.     As a direct and proximate result of the aforementioned acts by Defendants,

Plaintiff has suffered substantial injury, damage, loss, harm, anxiety, embarrassment, humiliation

and shame.  As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff

has been damaged and will be damaged, in an amount subject to proof.

55.     Plaintiff is informed and believes and on that basis alleges that the

aforementioned acts of Defendants were done intentionally or with a conscious and/or reckless

disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute

oppression, fraud, or malice.

## THIRD CAUSE OF ACTION

### (Publication of Private Facts as Against the Gawker Defendants)

56.     Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation

contained in Paragraphs 1 through 36, inclusive, as though fully set forth herein.

57.     The Gawker Defendants disclosed to the public the contents of the confidential

Video depicting Plaintiff fully naked and engaged in private consensual sexual relations with

Clem in a private bedroom.  The Gawker Defendants knew or should have known that the Video

contained private and confidential information, and that Plaintiff had a reasonable expectation of

privacy in being fully naked and engaged in consensual sexual relations in a private bedroom,

and that the Video, taken without Plaintiff's knowledge or consent, would reveal private and

personal things about Plaintiff which the Gawker Defendants had no right to disseminate,

disclose or exploit, and that the publication of these private facts would be offensive and

objectionable to a reasonable person of ordinary sensibilities.

58.     The Gawker Defendants' posting, publishing, distributing, disseminating and exploiting of Plaintiff engaged in sexual relations in private quarters was not carried out for reasonable or legitimate purposes.  Plaintiff had a reasonable expectation of privacy in being fully naked and having private consensual sexual relations with Clem in a private bedroom, and had no knowledge of, and did not consent to, the recording of such private sexual activity.

59.     The unauthorized publication by the Gawker Defendants of the Video, Narrative and any portions or content thereof, is offensive and objectionable to Plaintiff, as well as to any reasonable person of ordinary sensibilities, and is not of legitimate public concern.  Plaintiff did not consent to any use, distribution or exploitation by Defendants, or any other persons or entities, of the Video, Narrative or any portions or content thereof, whatsoever.

60.     The Gawker Defendants knew or should have known that the Video, Narrative and/or any portions or content thereof, contained private and confidential information, and that Plaintiff had a reasonable expectation of privacy in the sexual activities depicted therein, and that the Gawker Defendants' conduct would reveal private and personal things about Plaintiff which the Gawker Defendants had no right to disseminate, disclose or exploit, and that the publication of these private facts would constitute a clear and egregious violation of Plaintiff's right of privacy.

61.     The Gawker Defendants violated Plaintiff's fundamental privacy rights by the conduct alleged herein, including the outrageous intrusion into Plaintiff's privacy and the publication, dissemination, exploitation of the Video, Narrative and/or any portions or content thereof, in an unprivileged manner calculated to financial capitalize therefrom and garner publicity throughout the world, to unjustly enrich the Gawker Defendants and in conscious disregard of Plaintiff's right of privacy.

62.     Plaintiff is informed and believes and thereon alleges that the Gawker Defendants acted with actual malice and reckless disregard for Plaintiff's right of privacy.

63.     The Gawker Defendants have continued to invade Plaintiff's right of privacy by continuing to disseminate and post the Video and Narrative. Unless and until enjoined and restrained by order of this Court, the Gawker Defendants' continued acts will cause Plaintiff to continue to incur severe and irreparable injury that cannot adequately be compensated by monetary damages. By reason of the foregoing, Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the Video and all portions and content therefrom, including without limitation all still images thereof, and the Narrative.

64.     As a direct and proximate result of the aforementioned acts by the Gawker Defendants, Plaintiff has suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional distress in an amount subject to proof.

65.     Plaintiff is informed and believes and on that basis alleges that the aforementioned acts of the Gawker Defendants were done intentionally or with a conscious and/or reckless disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

## FOURTH CAUSE OF ACTION

### (Invasion of Privacy by Intrusion Upon Seclusion Against the Gawker Defendants)

66.     Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 36, inclusive, as though fully set forth herein.

67.     The Gawker Defendants, without Plaintiff's consent and against Plaintiff's will, have grossly invaded Plaintiff's protected rights of privacy as recognized under the United States Constitution, Florida Constitution, and applicable common law, by obtaining, watching and

editing the secretly recorded video and audio footage involving Plaintiff Clem and by posting

and publicly disclosing the Video depicting Plaintiff fully naked and engaged in private intimate

consensual sexual relations with Clem in a private bedroom, and by describing, in graphic, lurid

detail, the private activities that occurred in private quarters. In doing so, the Gawker

Defendants "peered into the private bedroom" and enabled the general public to "peer into the

private bedroom" and watch Plaintiff when he was fully naked and engaged in private sexual

activity, without Plaintiff's knowledge, authorization or consent.

68.     The Gawker Defendants' acquiring, viewing, editing, posting, publishing,

distributing, disseminating and exploiting of Plaintiff fully naked and engaged in sexual relations

in private quarters was not carried out for reasonable or legitimate purposes, but rather to reap

substantial revenues and profits at the expense of Plaintiff and others. Plaintiff had a reasonable

expectation of privacy in having private consensual sexual relations with Clem in a private

bedroom, and had no knowledge of, and did not consent to, the recording or dissemination of

such private sexual activity.

69.     The actions by the Gawker Defendants are offensive and objectionable to

Plaintiff, and would be offensive and objectionable any reasonable person of ordinary

sensibilities, and is not of legitimate public concern.

70.     The Gawker Defendants knew or should have known that the private video and

audio footage, depicting Plaintiff naked and engaged in consensual sexual activity in a private

bedroom, contained private and confidential information and content, and that Plaintiff had a

reasonable expectation of privacy in the activities depicted therein, and that the Gawker

Defendants' conduct would reveal private and personal things about Plaintiff which Defendants

had no right to disseminate, disclose or exploit, and that the publication of these private facts would constitute a clear and egregious violation of Plaintiff's right of privacy.

71.     The Gawker Defendants violated Plaintiff's fundamental privacy rights by the conduct alleged herein, including the outrageous intrusion into Plaintiff's privacy and the publication, dissemination, and exploitation of the Video and Narrative in an unprivileged manner calculated to financially capitalize therefrom, to garner publicity throughout the world, and to unjustly enrich the Gawker Defendants in conscious disregard of Plaintiff's right of privacy.

72.     Plaintiff is informed and believes and thereon alleges that the Gawker Defendants acted with actual malice and reckless disregard of Plaintiff's right of privacy.

73.     The Gawker Defendants have continued their invasion of Plaintiff's right of privacy by continuing to disseminate and post the Video and Narrative.  Unless and until enjoined and restrained by order of this Court, the Gawker Defendants' continued acts will cause Plaintiff to continue to incur severe and irreparable injury that cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the Video and all portions and content therefrom, including without limitation all still images thereof, and the Narrative.

74.     As a direct and proximate result of the aforementioned acts by the Gawker Defendants, Plaintiff has suffered injury; damage, loss, harm, anxiety, embarrassment, humiliation, shame and severe emotional distress.  As a direct and proximate result of the aforementioned acts by the Gawker Defendants, Plaintiff has been damaged and will be damaged, in an amount subject to proof.

75.     Plaintiff is informed and believes and on that basis alleges that the aforementioned acts of Defendants were done intentionally or with a conscious and/or reckless disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

## FIFTH CAUSE OF ACTION

### (Violation of Florida Common Law Right of Publicity Against the Gawker Defendants)

76.     Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 36, inclusive as though fully set forth herein.

77.     Plaintiff is a professional wrestler, motion picture actor, and television personality who has enjoyed mainstream popularity as the character "Hulk Hogan." Plaintiff is a twelve time world wrestling champion. Plaintiff has devoted a tremendous amount of time and effort developing his career and developing his universal goodwill, reputation and brand. Such efforts have created considerable commercial value in his name, image, identity and persona.

78.     The Gawker Defendants' unauthorized use of Plaintiff's name, image, identity and persona in connection with the Video and Narrative constitutes a violation and misappropriation of Plaintiff's right of publicity in that the Gawker Defendants misappropriated Plaintiff's name, likeness, image, identity and persona by using the Video and Narrative for the purpose of commercial gain, without Plaintiff's consent.

79.     The misappropriation of Plaintiff's publicity rights was for the Gawker Defendants' advantage in that Plaintiff's name, likeness, image, identity and persona were used and intended to create and enhance the Gawker Defendants' pecuniary gain and profit.

80.     The Gawker Defendants have continued to use Plaintiff's publicity rights continuing to disseminate the Video and Narrative at the Gawker Site, notwithstanding Plaintiff's numerous and repeated requests to Gawker Media and defendant Denton that they

cease and desist immediately and permanently. Unless and until enjoined and restrained by Order of this Court, the Gawker Defendants' continued acts will cause Plaintiff severe and irreparable injury which cannot be adequately compensated by monetary damages. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief enjoining the publication, distribution, dissemination and use of the Video and all portions and content therefrom, including without limitation all still images thereof, and the Narrative.

81.    As a direct and proximate result of the aforementioned acts by the Gawker Defendants, the Gawker Defendants have earned profits attributable to this unauthorized commercial use and exploitation of Plaintiff's name, image and likeness. The amount of such ill-gotten gains had yet to be ascertained. Plaintiff is entitled to recover all said unjust enrichment, including all profits earned by the Gawker Defendants as a result of the Gawker Defendants' unauthorized commercial exploitation as herein alleged.

82.    Moreover, Plaintiff is entitled to seek and hereby does seek the market value of the use of his publicity rights in the manner in which they were commercially exploited, without Plaintiff's permission and against his strenuous objections and legal demands.

83.    As a direct and proximate result of the aforementioned acts by the Gawker Defendants, Plaintiff has suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional distress in an amount subject to proof.

84.    Plaintiff is informed and believes and on that basis alleges that the aforementioned acts of the Gawker Defendants were done intentionally or with a conscious and/or reckless disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

## SIXTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress Against All Defendants)

85.     Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 36, inclusive as though fully set forth herein.

86.     At all times herein, Clem acted intentionally and unreasonably in creating the secretly-filmed video and audio footage and causing it to be disseminated to third parties when she knew or should have known that Plaintiff's emotional distress would likely result. The Gawker Defendants acted intentionally and unreasonably in acquiring, viewing, editing, publishing, distributing and disseminating the Video, and creating and publishing the Narrative, when they knew or should have known that emotional distress would likely result. Notwithstanding Plaintiff's repeated requests that Defendants cease and desist immediately from their posting and publishing of the Video and Narrative, the Gawker Defendants failed and refused to do so.

87.     Defendants' conduct was intentional and malicious and done for the purpose of causing, or was known by Defendants to likely cause, Plaintiff humiliation, mental anguish and severe emotional distress and was done with the wanton and reckless disregard of the consequences to Plaintiff.

88.     As such, in doing the acts alleged hereinabove, Defendants acted outrageously and beyond all reasonable bounds of decency, and intentionally inflicted severe emotional distress upon Plaintiff, to his detriment.

89.     As a proximate result of the aforementioned wrongful conduct, Plaintiff has suffered substantial monetary damages, including damages to his personal and professional reputation and career, and substantial emotional distress, anxiety and worry.

90.      Plaintiff is informed and believes and thereon alleges that Defendants acted with actual malice and reckless disregard of Plaintiff's right of privacy.

91.      Unless and until enjoined and restrained by order of this Court, Defendants' continued acts will cause Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the Video and all portions and content thereof and all copies thereof, and mandating the delivery of same to Plaintiff and transferring to Plaintiff all right, title and interest in the Video and all portions and content thereof and all copies thereof, and the Narrative.

92.      As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has suffered substantial monetary damages, including damages to his personal and professional reputation and career, and substantial injury damage, loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional distress in an amount that has not yet been fully ascertained.  As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has been damaged and will be damaged, in an amount subject to proof.

93.      Plaintiff is informed and believes and on that basis alleges that the aforementioned acts of Defendants were done intentionally or with a conscious and/or reckless disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

## SEVENTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress Against All Defendants)

94.      Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 36, inclusive as though fully set forth herein.

95.     At all times herein, Defendants acted negligently and unreasonably in creating the Video and causing it to be disseminated to third parties.  In doing so, Defendants acted beyond all reasonable bounds of decency, and negligently inflicted emotional distress upon Plaintiff, to his detriment.

96.     Defendants' conduct was negligent and proximately caused Plaintiff to suffer substantial humiliation, mental anguish and severe emotional distress and was done with the wanton and reckless disregard of the consequences to Plaintiff.

97.     As a proximate result of the aforementioned wrongful conduct, Plaintiff has suffered substantial emotional distress, anxiety and worry.

98.     Plaintiff is informed and believes and thereon alleges that Defendants acted with actual malice and reckless disregard of Plaintiff's right to privacy.

99.     Unless and until enjoined and restrained by order of this Court, Defendants' continued acts will cause Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of the Video and all portions and content thereof and all copies thereof, and mandating the delivery of same to Plaintiff and transferring to Plaintiff all right, title and interest in the Video and all portions and content thereof and all copies thereof.

## EIGHTH CAUSE OF ACTION

### (Violation of section 934.10, Florida Statutes Against All Defendants)

100.     Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 36, inclusive as though fully set forth herein.

101.     Plaintiff had a reasonable expectation of privacy in engaging in private consensual sexual relations in a private bedroom at all relevant times, and did not know about,

nor consent to, the taping of the activity depicted in the secretly-filmed video, or its publication or dissemination.

102.    Defendants violated Plaintiff's fundamental privacy rights by the conduct alleged herein, including the outrageous intrusion into Plaintiff's privacy and the publication, and dissemination of the secretly-filmed Video in an unprivileged manner in conscious disregard of Plaintiff's rights.

103.    Defendants disclosed or caused to be disclosed to third parties the contents of the secretly-filmed video depicting Plaintiff in or about 2006 engaged in private consensual sexual relations between with Clem in a private bedroom.  Defendants knew, or should have known, that the Video contained private and confidential information; that Plaintiff had a reasonable expectation of privacy in engaging in the activity depicted in the Video; that the Video was taken without Plaintiff's knowledge, consent, or approval and would reveal private and personal things about Plaintiff if disclosed to third parties which Defendants had no right to disseminate or disclose; and that this publication of these private facts would be offensive and objectionable to a reasonable person of ordinary sensibilities, and would have the natural tendency of causing substantial damages to Plaintiff.

104.    Defendants' actions have not served any legitimate public interest.

105.    Plaintiff is informed and believes and thereon alleges that Defendants have acted with actual malice and reckless disregard of Plaintiff's rights, including his right to privacy.

106.    Unless and until enjoined and restrained by order of this Court, Defendants' continued acts will cause Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages.  By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the distribution, dissemination and use of

the Video and all portions and content thereof and all copies thereof, and mandating the delivery of same to Plaintiff and transferring to Plaintiff all right, title and interest in the Video and all portions and content thereof and all copies thereof.

107.　　As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has suffered substantial injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional distress. As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has been damaged and will be damaged, in an amount subject to proof.

108.　　Plaintiff is informed and believes and on that basis alleges that the aforementioned acts of Defendants were done intentionally or with a conscious and/or reckless disregard of Plaintiff's rights, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud, or malice.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Terry Gene Bollea prays for judgment against defendants Heather Clem aka Heather Cole, Gawker Media, LLC aka Gawker Media, Gawker Media Group, Inc. aka Gawker Media, Gawker Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC, Nick Denton, A.J. Daulerio, Kate Bennert, Blogwire Hungary Szellemi Alkotast Hasznosito KFT aka Gawker Media as follows:

1.　　For an award of general and special damages in an amount in excess of the minimum jurisdictional limits of this Court in accordance with proof at trial together with interest thereon at the maximum legal rate;

2.　　For costs of suit incurred herein;

3.　　For an Order and Judgment transferring to Plaintiff all of Defendants' right, title and interest in and to the secretly-recorded video and audio footage depicting Plaintiff's sexual

encounter with Clem, and all portions and content thereof, and all copies and reproductions

thereof contained in all media;

4.     For an Order and Judgment requiring the delivery to Plaintiff of all copies of the

secretly-recorded video and audio footage depicting Plaintiff's sexual encounter with Clem, and

all portions and content thereof, in all formats and all forms of media, including electronic and

physical media, within Defendants' possession, custody or control, including without limitation

turning over to Plaintiff any and all storage devices (such as CDs, DVDs, hard drives, flash

drives, tapes, and disks) containing same;

5.     For preliminary and permanent injunction against Defendants and all persons

acting under their control, from any and all activity that would cause the distributing,

disseminating, publishing, displaying, posting for view or access on or through the Internet or

any other manner or media outlet, broadcasting, transferring, licensing, selling, offering to sell or

license, or otherwise using, exploiting or attempting to exploit, the secretly-recorded video and

audio footage depicting Plaintiff's sexual encounter with Clem, or any portions or content

thereof or any copies thereof, in any and all formats and media, including all electronic and

physical media;

6.     For an Order and Judgment requiring Defendants to turn over to Plaintiff all

information pertaining to the secretly-recorded video and audio footage depicting Plaintiff's

sexual encounter with Clem, including without limitation, all activity by all persons and entities

related to the creation, storage, transportation, editing, distributing, disseminating, publishing,

displaying, posting for view or access on or through the Internet or any other manner or media

outlet, broadcasting, transferring, licensing, selling, offering to sell or license, or otherwise using,

exploiting or attempting to exploit, such footage or any portions or content thereof or any copies thereof, in any and all formats and media, including all electronic and physical media;

7.      For a constructive trust to be placed upon Defendants and all persons acting on their behalf or under their direction or control, as to all revenues and profits received by any and all such individuals, including Defendants, to be held for the benefit of Plaintiff, and to be disgorged in their entirety to Plaintiff, in connection with the secretly-recorded video and audio footage depicting Plaintiff's sexual encounter with Clem, including the publishing of the Video and Narrative;

8.      For such other and further relief as to this court may deem and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Terry Gene Bollea hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: December 28, 2012

Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Christina K. Ramirez
Florida Bar No. 0954497
cramirez@bajocuva.com
**BAJO CUVA COHEN & TURKEL, P.A.**
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

DATED: December 28, 2012

Charles J. Harder, Esq.
California Bar No. 184593
(*Pro Hac Vice* application to be filed)
charder@HMAfirm.com
**HARDER MIRELL & ABRAMS LLP**
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA 90067
Telephone: (424) 203-1600
Facsimile: (424) 203-1601

*Attorneys for Plaintiff Terry Gene Bollea*