UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>v.<br><br>GAWKER MEDIA, LLC AKA GAWKER MEDIA; GAWKER MEDIA GROUP, INC. AKA GAWKER MEDIA; GAWKER ENTERTAINMENT, LLC; GAWKER TECHNOLOGY, LLC; GAWKER SALES, LLC; NICK DENTON; A.J. DAULERIO; KATE BENNERT; BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT AKA GAWKER MEDIA; and TERRY BOLLEA,<br><br>            Defendants. | Civil Action<br><br>Case No. 14-CV-5680 (SHS)<br><br>*Document filed electronically* |

**LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS OF NAUTILUS INSURANCE COMPANY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Federal Rules of Civil Procedure and Local Civil Rule 56.1, Plaintiff, Nautilus Insurance Company ("Nautilus"), respectfully submits the following statement of undisputed material facts in support of its motion for summary judgment.

    **I.**    **General Background**

1. In 2006, Terry Bollea was secretly videotaped while engaging in sexual conduct with Heather Clem. Declaration of Terry Bollea ("Bollea Dec."), Exhibit A at ¶¶1, 2, 26, 27.

2. In October 2012, the video was posted by Gawker Media, LLC ("Gawker") to a website owned by Gawker, and was accompanied by a narrative created by Gawker. Bollea Dec., Exhibit A at ¶¶ 26-28.

3. Gawker owns and operates a website that contains gossip for followers of entertainment, media and news.   http://advertising.gawker.com/platform/gawker/

4. Mr. Bollea was in Florida when he learned that Gawker posted the video with the accompanying narrative.  Bollea Dec., ¶ 4.

5. Subsequent to learning of Gawker's posting and narrative, Bollea sued Todd Alan Clem and Heather Clem in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County Florida.   Declaration of Justin N. Kinney, Esq. ("Kinney Dec."), Exhibit H.

6. On or about December 28, 2012, Bollea filed a first amended complaint dropping Todd Alan Clem and adding Gawker Media, LLC, Gawker Group, Inc., Gawker Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC, Nick Denton, A.J. Daulerio, Kate Bennert and Blogwire Hungary Szellemi Alkotast Hasznosito (collectively the "Gawker Defendants"). Bollea Dec., Exhibit A.

7. Bollea asserted the following causes of action:  1) invasion of privacy (against Heather Clem); 2) publication of private facts (against Heather Clem); 3) publication of private facts (against the Gawker Defendants); 4) invasion of privacy (against the Gawker Defendants); 5) violation of Florida Common Law Right to Publicity (against the Gawker Defendants); 6) intentional infliction of emotional distress (against all defendants); 7) negligent infliction of emotional distress (against all defendants); and 8) violation of section 934.10 of the Florida Statutes (against all defendants).  Bollea Dec., Exhibit A.

8. Bollea alleges that he is a resident and citizen of Pinellas County, Florida.  Bollea Dec., Exhibit A.

9. Bollea alleges that the defendants "engaged in outrageous, irresponsible and despicable conduct that should be punished to the maximum extent under the law."  Bollea Dec., Exhibit A. at ¶1.

10. Bollea states that on October 4, 2012, the "Gawker Defendants posted to the Internet a one-minute and forty-second 'highlight reel' of the secretly-taped video and audio footage depicting Mr. Bollea naked and engaged in private consensual sexual relations with Clem in a private bedroom. . . .  The Gawker Defendants also posted, with the Video, a graphic narrative." Id.

11. In opposing Gawker's motion to dismiss in the Bollea Action, Bollea argued:

> With certain exceptions, the "impact rule" bars a plaintiff from recovering damages for his or her emotional distress that is caused by another's negligence but does not flow from physical injury. But **the "impact rule" does not bar injunctive relief.**  Mr. Bollea seeks injunctive relief in connection with this claim.

[Kinney Dec., Exhibit I, p. 18 (emphasis in original).]

## II.    The Nautilus Policy

12. Nautilus issued Gawker a commercial lines policy bearing policy number NN224201 with commercial general liability ("CGL") limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate (the "Nautilus Policy").  Declaration of Anthony Ehrhardt ("Ehrhardt Dec."), Exhibit A.

13. The general liability coverage premium for the Nautilus Policy was $3,210, and the premium basis for such premium was the square footage of Gawker's offices located at 210 Elizabeth Street, New York, New York.  Id.

14. The insuring agreement for Coverage A of the CGL coverage under the Nautilus Policy provides, in relevant part, as follows:

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III –Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

[<u>Id.</u>]

15. The Nautilus Policy contains the following relevant definitions:

    3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*   *   *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, welling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f. The use of another's advertising idea in your "advertisement"; or
   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"."

[Id.]

16. Coverage A of the CGL coverage under the Nautilus Policy includes the following relevant exclusion:

   This insurance does not apply to:

   o.   Personal And Advertising Injury

   "Bodily injury" arising out of "personal and advertising injury".

[Id.]

17. The Nautilus Policy also includes an endorsement that provides:

   EXCLUSION – PERSONAL AND ADVERTISING INJURY
   This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART.

> COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply.

[Id.]

18. The Nautilus Policy also includes an endorsement entitled "LIMITATION OF COVERAGE TO DESIGNATED OPERATIONS," which provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A.    The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability and Coverage C – Medical Payments:
>
> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of, or in any way related to, operations performed by any insured or any person or organization for whom any insured may be legally or contractually responsible, unless such operations are "designated operations".
>
> B.    For the purpose of this endorsement, the following definition is added to the Definitions section:
>
> "Designated operations" means only those operations performed by any insured that are described on the General Liability Coverage Part Declarations, the endorsements, or supplements of this insurance.

[Id.]

19. The General Liability Coverage Part Declarations of the Nautilus Policy identifies the business description as "office" and identifies the 210 Elizabeth Street address.  Id.

20. That page also identifies the risk classifications for the CGL coverage as well as the premium basis for it.  Id.

6

21. The classifications were "Buildings or Premises – office – OTNFP", "Additional Insured-All Other" and "Waiver of Transfer of Rights of Recovery Against Others to Us-L605."  Id.

22. The stated premium basis used for the CGL coverage was area square footage for the Elizabeth Street office location.  Id.

23. Subsequent to the issuance of the Nautilus Policy, Gawker's agent, York-Jersey Underwriters, Inc. ("York"), approached Nautilus' broker, Jimcor Agencies, Inc. ("Jimcor") to seek special event coverage.  Declaration of Kevin Engelke ("Engelke Dec."), Exhibit A.

24. In response, Jimcor questioned York about articles concerning Gawker relating to copyright infringement, alleged bribes, and an FBI investigation, among other issues.  Id.

25. In response, York said:

> Gawker won the copyright infringement case.  There has been no action taken on the alleged bribe and no investigation is pending.  The insured does not know of any FBI investigation and he is the lead counsel for Gawker.  They did settle with Sarah Palin with no admission of liability.
>
> Because of their operations, they (sic) are always accusations being made which are handled in house by their legal dept.  Our policy covers their office liability exposure and occasional (sic) they need event coverage. Yes they have a separate E&O media liability policy…the insured is forwarding a copy . . . .

[Id.]

26. The separate E&O media liability policy maintained by Gawker was issued by non-party Federal Insurance Company.  Declaration of Brenda Phillips ("Phillips Dec."), Exhibit A.

27. The premium on that policy is $23,004.00.  Id..

**III.    Tender and Nautilus' Response**

28. On or about July 3, 2013, Nautilus received notice of the Bollea Action from Gawker. Ehrhardt Dec., ¶ 2.

7

29. On July 18, 2013, Nautilus issued a disclaimer letter to Gawker.  Ehrhardt Dec., Exhibit B.

30. The grounds for the disclaimer included, but were not limited to, the fact that the conduct alleged in the Bollea Action was "not accidental in nature, and therefore would not constitute an 'occurrence' as defined in the policy."  Id.

31. In addition, Nautilus stated that "there are no allegations . . . that would constitute a claim involving 'bodily injury' or 'property damage' [and t]herefore Coverage A would not apply."  Id.

32. Nautilus also advised that there was no coverage for "'bodily injury' or 'property damage' intentionally caused by or at the direction of the insured" based on the Expected or Intended Injury Exclusion of Coverage A, and that there was "no coverage [] provided for any claims of 'personal and advertising injury'" based on the Exclusion-Personal and Advertising Injury Endorsement.  Id.

33. In a letter dated August 1, 2013, Gawker challenged the disclaimer letter.  Ehrhardt Dec., Exhibit C.

34. Gawker stated that "[b]ecause the Policy in fact affords coverage for this claim, Gawker requests that Nautilus immediately reverse its coverage denial and assume responsibility for the costs of defense – and, if necessary, indemnification – for this claim."  Id.

35. Gawker also claimed  that the Bollea Action sought damages as a result of the emotional distress suffered by Bollea.  Id.

36. Gawker further claimed that the negligent infliction of emotional distress "at a minimum triggers the Policy's coverage; otherwise, claims alleging negligence would not be covered and the Policy's coverage would be illusory."  Id.

37. In addition, Gawker challenged Nautilus' assertion that there was no accident and that the expected or intended exclusion applied, claiming that the complaint "alleges that the injuries were caused at least in part by accidental, negligent conduct that was not intended or expected by the insured [and therefore] Coverage A of the Policy applies." Id.

38. In response to Gawker's challenge, on September 12, 2013, Nautilus issued a reservation of rights letter to the Gawker Defendants and advised that Nautilus "will agree to contribute to the defense of [the Gawker Defendants]." Ehrhardt Dec., Exhibit D.

39. Nautilus stated in the letter that it "is reserving the right to litigate all coverage defenses and withdraw from the defense of the Gawker Defendants if a court determines that Nautilus has no duty to defend with respect to the claims asserted by Terry Bollea." Id.

40. Nautilus identified certain policy provisions that could limit or preclude coverage for the claims against Gawker, including the Insuring Agreement of Coverage A, Exclusions a. and o. of Coverage A, the Personal and Advertising Injury Exclusion, and the "Limitation of Coverage to Designated Operations" endorsement. Id.

41. Nautilus also stated that:

> Nautilus Insurance Company reserves the right to disclaim coverage and to bring an action in an appropriate state or federal court of competent jurisdiction and venue in order to limit, obtain a declaration, or interplead, to enforce the limitations mentioned herein and declare the obligations and responsibilities of the parties hereto under the contract of insurance. Nautilus Insurance Company, by this letter, by contributing to the defense of the Gawker Defendants, and by its continued investigation, does not waive nor invalidate any of the other terms, conditions or exclusions of the policy. We specifically reserve the right to exercise any of the other terms, conditions or exclusions, which now exist or may later become apparent.

[Id.]

42. The law firms of Levine, Sullivan, Koch & Schultz, LLP and Thomas & LoCicero PL have been serving as defense counsel for the Gawker Defendants in the Bollea Action. Ehrhardt Dec., ¶ 6.

43. These firms are the Gawker Defendants' own counsel, selected by the Gawker Defendants, and are not appointed by Nautilus. Ehrhardt Dec., ¶ 7.

44. Nautilus has not controlled the defense of the Bollea Action. Ehrhardt Dec., ¶ 8.

### IV.     The Declaratory Judgment Action

45. On July 29, 2014, Nautilus filed the present action against the Gawker Defendants and Bollea, seeking a declaration that Nautilus has and had no duty to defend or indemnify the Gawker Defendants for the claims asserted by Bollea in the Bollea Action based on the terms of the Nautilus Policy, as well as reimbursement of defense costs incurred in the defense of the Bollea Action. Kinney Dec., Exhibit A.

46. Nautilus has since dismissed the action as against Bollea and the Gawker Defendants other than Gawker.  Kinney, Dec., Exhibits D and E.

47. On August 19, 2014, Gawker filed an answer and counterclaim. Kinney Dec., Exhibit B.

48. On September 9, 2014, Nautilus answered the counterclaim. Kinney Dec., Exhibit C.

49. On September 24, 2014, the parties requested permission to file dispositive motions on the duty to defend. Kinney Dec., Exhibit F.

50. This application was granted on September 29, 2014. Id.

Dated: New York, New York  COUGHLIN DUFFY LLP
       October 23, 2014

                                          /s/ Justin N. Kinney
                                          Justin N. Kinney, Esq.
                                          88 Pine Street, 28th Floor
                                          New York, New York 10005
                                          (212) 483-0105
                                          Attorneys for Plaintiff
                                          Nautilus Insurance Company